IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD LONDON,

    Petitioner,                         No. CIV S-06-00535 GEB CHS P

    vs.

ROSEANNE CAMPBELL, et al.,

    Respondents.                    FINDINGS AND RECOMMENDATIONS

_____/

I.    INTRODUCTION

       Petitioner Richard London is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the February 2, 2004, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for parole. Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

II.    FACTUAL AND PROCEDURAL BACKGROUND

    A.    Facts

       The Board recited the facts of petitioner's commitment offense as follows:

> PRESIDING COMMISSIONER WELCH: All right. Then I'll read it from the Board report that's dated November 2003. It says on June 8th, 1975, at approximately 2:45 p.m., San Francisco

1

|   |   |
|---|---|
| 1 | Police officers responded to a reported shooting, and discovered Wilbur Jackson, J-A-C-K-S-O-N, and Sally Boye, B-O-Y-E, a schoolteacher, slumped down in the front seat of a 1968 Chevrolet Camaro, which was parked in front of Mr. Jackson's residence. Mr. Jackson and Ms. Boye [were] apparent victims of multiple gunshot wound[s]. Five extended - - expended nine-millimeter cartridges [were] found on the driver's side of the vehicle, and the vehicle driver's window had been smashed out. Responding ambulance attendants pronounced both victims dead. A witness told the police officers he observed a young man with a thin build fire several shots, shattering the driver's window, then approached the vehicle, reached inside and shattered the window and fired more shots. The following day, police investigators found a [heavily] damaged nine millimeter pistol, minus the barrel, which was forwarded to the crime lab. Upon the sub sequential - - subsequent investigation, homicide investigation was able to obtain a nine millimeter, minus the barrel, from a Sacramento gun shop named Walter Handsaker, H-A-N-D - - Handsaker. H-A-N-D-S-A-K-E-R, who matched - - to match the barrel discovered at the scene. Mr. Handsaker informed police inspectors that London had brought the damaged pistol to his shop for repair several weeks after the Jackson/Boye shooting. Additional information revealed that London was reported to be a member of a small militant revolutionary group, composed of - - in part of ex-convicts called the Capital Tribal Thumb. In subsequent court testimony, a former member of the - - this group, Mr. Gary Johnson, stated that the Tribal Thumb considered Jackson a snitch and a danger to the movement and a person who should be removed from (indiscernible) movement to the establishment for his own personal gain. Mr. Handsaker, the gunsmith, testified that London told him after the killing that he was now a professional hit man. And an additional witness, Samuel Brooks, who shared a cell with London in Santa Clara Jail, testified that London had bragged to him about the killing. London was subsequently found guilty by a jury, for both murder and possession of a concealed weapon by an ex-felon. The prisoner's version - - [t]he prisoner stated that he shot Jackson, and that his crime partner fired at Boyle - - Boye, and acted - - an act of premeditated first degree murder. He recognized that he was responsible for both murders, although at the time of the offense, he expressed that he did not wish to see Boye killed. London continued to show that he accept[ed] [responsibility] for his action by indicating to his counselor that he did shoot victim Jackson; however, he did not shoot and kill the second victim, Sally Boye. |

/////

Answer, Exhibit B at 11-14.

On October 24, 1978, petitioner began serving a sentence of seven years to life.

Answer, Ex. A. On February 2, 2004, the Board held a life parole consideration hearing for

2

1 petitioner. Answer, Ex. B at 2. At the conclusion of that hearing the Board found petitioner

2 unsuitable for parole. Answer, Ex. B at 41.

        B.        State Habeas Review

On July 21, 2005, petitioner filed a petition for writ of habeas corpus in the San Francisco County Superior Court. Answer, Ex. E at 5. That petition was denied on September 12, 2005, in a reasoned opinion. Id. at 2-4.

Petitioner then filed a petition with the California Court of Appeal on November 16, 2005. Answer, Ex. F at 5. That petition was summarily denied on December 27, 2005. Id. at 2. Petitioner finally petitioned the California Supreme Court for review on January 4, 2006. Answer, Ex. G at 3. That petition was summarily denied on February 22, 2006. Id. at 2. Mr. Williams filed this federal petition on March 14, 2006.

III.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

3

the merits in State court proceedings unless the adjudication of the claim -

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

IV.    DISCUSSION OF PETITIONER'S CLAIM

    A.    Due Process

        1)    Description of Claim

Petitioner argues that the Board's determination relied entirely on the unchanging circumstances of his commitment offense ignoring other relevant evidence specifically that one of the murders was committed by petitioner's crime partner. Petition at 4-5. He argues that in doing so the Board violated his right to due process. Id.

        2)    State Court Opinion

The San Francisco County Superior Court rejected petitioner's argument stating:

> The decision of the Board members reveals that one of the reasons petitioner was denied parole was that the offense was carried out in an especially cruel and callous manner. He walked up to a car in which the victims were sitting and shot them "execution style." One victim was killed because a group with which petitioner associated considered him a "snitch." The other victim was a woman who just happened to be in the car–in the wrong place at the wrong time. Witnesses stated petitioner later claimed he was a "hit man" and an "executioner."
>
> According to the Board's decision, petitioner's history showed an escalating pattern of criminal activity and a history of unstable relationships, particularly with his father. He had failed previous

4

> grants of probation and parole. His criminality began at a very early age. The Board also noted positive aspects of the petitioner's conduct, and asked that he continue to remain disciplinary free, and participate in a vocational program. Because the Board relied on "some evidence" for its decision, the petitioner is not entitled to relief. The Board found petitioner had reduced his level of dangerousness, but that there was still "room for improvement." The Board did take petitioner's medical problems into account, noting they could limit his vocational training somewhat.
>
> Petitioner argues that the evidence at the hearing was not reliable, because other evidence (the autopsy report, testimony at trial, and the prosecutor's closing argument) indicate that he had an accomplice. However, this does not affect the outcome, as the Board recognized that this was petitioner's version of the story. The Board observed that the petitioner recognized his own responsibility for the killings, even though he claimed to have had an accomplice.

/////

Answer, Ex. E at 2-3.

          3)    <u>Applicable Law</u>

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz</u>

5

v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). In this regard, it is clearly established that California's parole scheme provides prisoners sentenced in California to a state prison term that provides for the possibility of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12)). Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Thus, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

Id.

California law requires that the Board "determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal.Code. Regs., tit. 15 § 2402(c)-(d)." Irons, 505 F.3d at 662-63.

/////

6

The <u>Irons</u> court described the regulations as follows:

> [T]he circumstances tending to show that a prisoner is unsuitable include: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "serious misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c). Circumstances tending to show that a prisoner is suitable for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; . . . (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Cal.Code. Regs., tit. 15 § 2402(d).

<u>Id.</u> at 663 n.4.

In California, the overriding concern in determining parole suitability is public safety and the focus is on the inmate's <u>current</u> dangerousness. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1086 (Cal. 2005); <u>In re Lawrence</u>, 44 Cal. 4th 1181, 1205 (Cal. 2008). The California Supreme Court recently stated:

> [T]he Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety [and] the core determination of "public safety" . . . involves an assessment of an inmate's *current* dangerousness. . . . [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are designed to guide an assessment of the inmate's threat to society, *if released*, and hence could not logically relate to anything but the threat *currently* posed by the inmate.

<u>In re Lawrence</u>, 44 Cal. 4th at 1205-06 (internal citations omitted). Accordingly, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." <u>Id</u>. at 1212 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 658 (Cal. 2002); <u>In re</u>

1  Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

2  "The 'some evidence' standard is minimally stringent," and a decision will be
3  upheld if there is any evidence in the record that could support the conclusion reached by the
4  fact-finder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987));
5  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence
6  underlying the [ ] decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390.
7  See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is
8  satisfied does not require examination of the entire record, independent assessment of the
9  credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question
10 is whether there is any reliable evidence in the record that could support the conclusion reached.
11 Id.
12 /////

13          4)      Discussion
14       The Board relied on four factors in finding petitioner unsuitable for parole: the
15 circumstances of the commitment offense, his pattern of escalating criminal history, his failure to
16 fully upgrade vocationally and the need to improve his parole plans.[1]
17       With respect to the circumstances of the commitment offense the Board found:

> The offense was carried out in an especially cruel and callous
> manner. Multiple victims were killed. The offense was carried out
> in a dispassionate and calculated manner such as an execution - -
> you know, this was - - this was an execution style murder. It's not
> (sic) way - - it's (sic) no way of getting around it. The victim
> certainly didn't have that coming. The offense was carried out in a
> manner that demonstrates an exceptionally callous disregard for

---

[1] The Board also noted that petitioner had an unstable social history, "especially as far as his father was concerned." Answer, Ex. B at 41. Under California law, one factor tending to show unsuitability for parole is the presence of an unstable social history. Cal. Code Regs., tit. 15 §2402 (c)(3). An unstable social history is defined as a "history of unstable or tumultuous relationships with others." Id. Other than petitioner's poor relationship with his physically abusive father, it is not clear from the record that petitioner had any other "unstable or tumultuous relationships." For that reason, this finding will not be used to support the Board's determination.

8

>                    the life of a human being. The motive for the crime was
>                    inexplicable or very trivial. It even goes beyond being very trivial.
>                    It was just - - there was no reason for this.

Answer, Ex. B at 41-42.

The circumstances of the commitment offense are one of fifteen factors relating to an inmate's unsuitability or suitability for parole under California law. Cal.Code. Regs., tit. 15 § 2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated that:

>                    A prisoner's commitment offense may constitute a circumstance
>                    tending to show that a prisoner is presently too dangerous to be
>                    found suitable for parole, but the denial of parole may be
>                    predicated on a prisoner's commitment offense only where the
>                    Board can "point to factors beyond the minimum elements of the
>                    crime for which the inmate was committed" that demonstrate the
>                    inmate will, at the time of the suitability hearing, present a danger
>                    to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at
>                    1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors
>                    beyond the minimum elements of the crime include, inter alia, that
>                    "[t]he offense was carried out in a dispassionate and calculated
>                    manner," that "[t]he offense was carried out in a manner which
>                    demonstrates an exceptionally callous disregard for human
>                    suffering," and that "[t]he motive for the crime is inexplicable or
>                    very trivial in relation to the offense." Cal.Code. Regs., tit. 15
>                    § 2402(c)(1)(B), (D)-(E)."

/////

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

The relevant inquiry therefore "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor." In re Lawrence, 44 Cal. 4th at 1221; In re Dannenberg, 34 Cal. 4th at 1070-71.

9

A review of petitioner's commitment offense finds that multiple victims were attacked and killed. While petitioner disputes his role in the murder of Ms. Boye there is no dispute that petitioner at a minimum participated in the attack that caused in her death. Further, an execution style murder is the explicit example given in the regulation of a murder that was committed in a "calculated and dispassionate manner." Cal.Code Regs., tit. 15 §2402 (c)(1).

With respect to triviality, all murder is trivial to some degree. Therefore for purposes of comparison and to fit the statutory definition the motive must be materially less significant (or more "trivial") than those which typically drive people to commit murder and therefore is more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented. In re Scott, 119 Cal.App.4th 871, 891 (2004). As the Board stated, the motive here was "beyond being very trivial." Answer, Ex. B at 42. Mr. Jackson was murdered because he was suspected of informing on a militant group's illegal activities. Ms. Boye was the quintessential innocent victim who found herself at the wrong place at the wrong time.

The identified facts of petitioner's commitment offense are such that they were probative to the central issue of his then current dangerousness when considered in light of the full record before the Board. In addition to the commitment offense the Board noted petitioner's escalating criminal history.

At the age of 13 petitioner was arrested for petty theft. Id. at 14. Three years later he made a false bomb threat at a school. Id. A series of petty thefts and a burglary resulted in a placement in the California Youth Authority. Id. Two years after his release, he was convicted of burglary and committed to state prison. Id. As an adult he sustained convictions for larceny, obstruction of justice, burglary and possession of dangerous weapons. Id. at 15. While incarcerated for the commitment offense petitioner received administrative discipline for drug trafficking and was a validated member of a prison gang until 1998. Id. In addition to his criminal history, the Board noted petitioner's failure to fully upgrade vocationally and encouraged him to improve his parole plans.

At the time of the hearing petitioner had not completed training in a vocation. Answer, Ex. B at 22. Petitioner however suffers from Hepatitis C and nerve damage. The Board acknowledged the difficulties petitioner faced in obtaining a vocation stating:

> If available, and we do recognize that he [may] have an ADA issue or you may have an ADA issue - - and I did see some documentation in the C-File that - - to get a vocation, if it's all - - if it [is at] all possible. If not a vocation, certainly get involved in PIA and get involved in a job that would - - where he could develop some skills that could be put to use upon release.

/////

Answer, Ex. B at 46. The Board also requested that petitioner improve his parole plans.

At the hearing petitioner presented offers of employment and residence in California and other states. Id. at 30-33. Petitioner admitted however that he had no parole plans should he be returned to the county of his residence at the time of the commitment offense. Id. at 32. While the Board acknowledged that petitioner did "have some parole plans" it requested that petitioner continue to "work on" those plans. Id. at 43.

Under California law, one factor tending to show suitability for parole is that the petitioner "has made realistic plans for release or has developed marketable skills that can be put to use upon release." Cal. Code. Regs., tit. 15 § 2402(d)(8). The Board's decision acknowledged that petitioner had made strides in his parole plans but needed to improve those plans and, if possible, complete a course of vocational training.

The facts of petitioner's commitment offense were probative to his then current dangerousness when considered in light of the full record before the Board. That record included petitioner's escalating criminal history, his inability to fully upgrade vocationally and the need to improve his parole plans.

It is undisputed that petitioner had a history of criminal activity culminating in the premeditated, cold-blooded murder of Mr. Jackson. While petitioner maintains that he did not fire the bullets that killed Ms. Boye, a truly innocent victim of circumstance, he was at a minimum acquiescent to her murder. While petitioner had been incarcerated for more than 25

11

years at the time of the hearing, he had received administrative discipline for drug trafficking only eight years earlier, had become a validated "drop out" from his prison gang only six years earlier, and had been disciplinary free for only four years prior to the hearing. Answer, Ex. B at 24. Further the Board expressed the need for petitioner, within his physical ability, to learn some marketable trade or skill.

Based on this record there was some evidence to support the Board's finding of unsuitability. The opinion of the San Francisco County Superior Court affirming the finding of some evidence was therefore not unreasonable. Petitioner's right to due process was not violated and he is not entitled to relief on this claim.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 27, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE